UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIANE T.,[1] | ) |
| | ) |
|     *Plaintiff,* | ) |
| | ) |
|     v. | ) No. 1:20-cv-03080-MG-TWP |
| | ) |
| KILOLO KIJAKAZI,[2] Acting Commissioner of the Social Security Administration, | ) |
| | ) |
|     *Defendant.* | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

In August 2017, Plaintiff Diane T. applied for disability widow's benefits and disability insurance benefits ("DIB"), alleging a disability onset date of January 1, 2013. [Filing No. 11-9 at 3, 9.] Her application was initially denied on November 16, 2017, and upon reconsideration on January 24, 2018. [Filing No. 11-8 at 2-9, 14-27.] The Administrative Law Judge (the "ALJ") conducted a hearing on August 1, 2019. [Filing No. 11-6 at 146-171.] The ALJ issued a decision on September 3, 2019, concluding that Diane T. was not entitled to receive benefits. [Filing No. 11-6 at 123-139.] The Appeals Council denied review on September 25, 2020. [Filing No. 11-2 at 2-8.] On November 29, 2020, Diane T. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Fed. R. Civ. P. 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when he was named Acting Commissioner.

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 14.] For the reasons set forth below, this Court **REVERSES** the ALJ's decision denying Diane T. benefits.

## I.
### STANDARD OF REVIEW

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill,* __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill,* 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* In reviewing the ALJ's decision, the Court must uphold the ALJ's finding of fact if the findings are supported by substantial evidence. *Stephens,* 888 F.3d at 327. For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul,* 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek,* 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens,* 888 F.3d at 327. The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul,* 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin,* 758 F.3d 834, 837 (7th Cir. 2014)). Reviewing courts also "do not decide questions of credibility,

deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, he will automatically be found disabled. If a claimant satisfies Steps One and Two, but not Three, then he must satisfy Step Four. Once step Four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley,* 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)). Reversal is not required, however, if the error is harmless. *See, e.g., Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart,* 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

## II.
### BACKGROUND

Diane T. was 53 years old on January 1, 2013, the date of her alleged onset of disability. [Filing No. 11-10 at 13.] She completed school up until the seventh grade, and never received her GED. [Filing No. 11-6 at 152; Filing No. 11-10 at 6.] Diane T. had past relevant work as a housekeeper and optical assistant. [Filing No. 11-10 at 6.] Diane T. alleges she can no longer work due to depression, diabetes, thyroid removal, sleep insomnia, memory loss, high blood pressure, high cholesterol, and emphysema.[3] [Filing No. 11-10 at 5.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

The ALJ then followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Diane T. was not disabled. [Filing No. 11-6 at 129.] Specifically, the ALJ found as follows:

- At Step One, Diane T. had not engaged in substantial gainful activity[4] during the period at issue. [Filing No. 11-6 at 129.]

- At Step Two, Diane T. "has the following severe impairments: chronic obstructive pulmonary disease (COPD); hyperthyroidism; seizures; major depressive disorder (MDD); sequelae of multiple closed head injuries (CHI); obesity (20 CFR 404.1520(c))." [Filing No. 11-6 at 129.]

- At Step Three, Diane T. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404.1520(d), 404.1525, and 404.1526. [Filing No. 11-6 at 129.] As to the "paragraph B" criteria for Listings 12.04 and 12.06, the ALJ found Diane T. had "moderate" limitations in two areas: understanding, remembering, or applying information; and concentrating, persisting, or maintaining pace. [Filing No. 11-6 at 130-131.] The ALJ further found "mild" limitations in two areas: interacting with others; and adapting or managing oneself. [Filing No. 11-6 at 130-131.]

- After Step Three but before Step Four, Diane T. had the RFC " to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can lift up to 50 pounds occasionally, lift or carry up to 25 pounds frequently in medium work as defined by the regulations; never climb ladders, ropes or scaffolds; never be exposed to unprotected heights or hazardous machinery; work is limited to simple, routine and repetitive tasks." [Filing No. 11-6 at 131.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Diane T.'s RFC, the ALJ determined Diane T. was capable of performing her past relevant work as a housekeeper. [Filing No. 11-6 at 138.]

- At Step Four, the ALJ determined Diane T. was not disabled from January 1, 2013 though the date of the decision. [Filing No. 11-6 at 139.]

### III.
### DISCUSSION

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

Diane T. argues the ALJ erred by: (1) failing to account for her own findings of moderate limitations in concentration; (2) failing to assess the state agency psychologists' opinions of moderate "checkbox" limitations in concentration; (3) failing to assess the state agency psychologists' social interaction limitations; (4) failing to provide an explanation for dismissing the consultative examiner ("CE") Melissa D. Sprinkle, Psy.D.'s opinion that Diane T. required "more supervision, re-direction, and repetition" in a work environment; and (5) failing to assess agency expert opinions on limitations to her exposure to pulmonary irritants and evaluation of "light" exertional work. [*See generally* Filing No. 16.]

### A.   Concentration Limitations

Diane T. contends the ALJ did not appropriately address her limitations in maintaining concentration in the RFC determination or hypotheticals posed to the VE. Specifically, Diane T. asserts that the ALJ's assessment failed to include the concentration-related "checkbox" limitations evaluated by the state agency psychologists. [Filing No. 16 at 10-11; Filing No. 23 at 4-5.] In response, the Commissioner contends that the ALJ provided the state agency psychologists' findings partial weight and formulated a mental RFC determination that is consistent with their narrative summaries. [Filing No. 16 at 10-11.]

When the ALJ undertook the Step Three analysis of Diane T.'s impairments, regarding concentration, persistence or maintaining pace ("CPP"), she found that Diane T. had a moderate limitation. [Filing No. 11-6 at 130-131.] In the RFC, the ALJ found that Diane T. was "limited to simple, routine and repetitive tasks." [Fling No. 11-6 at 131.] The ALJ's hypothetical question posed to the VE is as follows:

> All right, so assuming a person of claimant's age, education, work experience, and skill set, if the individual was, we'll start with, was limited to medium work as defined by the regulations. No climbing ladders, ropes, or scaffolds; should avoid all use of hazardous machinery and all exposure to unprotected heights; and work

would be limited to simple, routine, repetitive tasks. Given those limitations, could such an individual do any of the claimant's past work?

[Filing No. 11-6 at 168.] The VE opined that Diane T.'s prior position of Housekeeper could be performed. [Filing No. 11-6 at 168.] The ALJ then asked the VE if adding "reminders to stay on task, say every hour" and "if the individual was off task 20 percent of the day" would impact the jobs she recommended. [Filing No. 11-6 at 168-169.] The VE opined that unskilled medium jobs, such as Packer and Assembler, would be available for an individual requiring reminders to stay on task, however Diane T.'s prior housekeeper position would not be available. [Filing No. 11-6 at 168.] Further, the VE opined that there would be no jobs available if an individual was off task 20 percent of the day. [Filing No. 11-6 at 169.]

Dr. S. Hill, Ph.D. and Dr. Joelle Larsen, Ph.D. had opined the following constraints in their narrative summaries:

> The totality of evidence in file suggests that the claimant is able to: understand, carry out and remember simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief supervision and interactions with coworkers and work situations; able to deal with changes in a routine work setting.

[Filing No. 11-7 at 12, 26.] Drs. Hill and Larsen also reported concentration-related "checkbox" limitations indicating Diane T. was moderately limited in her ability to "carry out detailed instructions," and to "maintain attention and concentration for extended periods." [Filing No. 11-7 at 11, 25.] While the ALJ mentioned these reports generally in the RFC determination, the ALJ failed to discuss Drs. Hill and Larsen's concentration related findings or mention their reports in the hypotheticals she posed to the VE.

Diane T. correctly notes that the Seventh Circuit has repeatedly rejected the notion that a hypothetical "confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and

pace." [Filing No. 16 at 18.] Diane T. asserts the ALJ's RFC determination limiting her to "simple, routine, and repetitive tasks" is "even more deficient than the limitations assessed by the ALJ in *Varga*." [Filing No. 16 at 18.] *See Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008); *see also DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015).

In *Varga*, the Seventh Circuit found the ALJ did not properly address the claimant's moderate difficulties in CPP in the hypothetical question posed to the VE. 794 F.3d at 814. In *Varga*, at Steps Two and Three, the ALJ determined the claimant had "moderate difficulties" regarding CPP. *Id.* Then, in the RFC, the ALJ concluded the claimant could perform "light work" and was limited to "simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions." *Id.* at 812-13. The court noted that the "hypothetical posed to a VE must incorporate *all* of the claimant's limitations supported by the medical record—including moderate limitation in concentration, persistence, and pace." *Id.* at 814 (emphasis in original). Further, the court stated that limiting a claimant to "simple, routine, and repetitive tasks" is "unrelated" to the question of whether a claimant with difficulties maintaining CPP can perform such work. *Id.* at 816. Therefore, the ALJ committed reversible error. *Id.* at 814.

Diane T. argues that the RFC determination in *Varga* is similar to the RFC determination in this case, because her RFC states she is unrestrained in her ability to perform "simple, routine and repetitive tasks." [Filing No. 16 at 18.] The Court agrees. Like in *Varga*, the ALJ limited Diane T. to simple and repetitive tasks but failed to provide a reasoning between her recitation of medical evidence and the decision. Though finding Diane T. had moderate limitations in CPP, the ALJ

failed to show how her RFC determination accounted for all of Diane T.'s difficulties in maintaining CPP detailed by objective medical evidence.

Therefore, remand is necessary so that the ALJ can articulate the effects of Diane T.'s moderate limitations in maintaining CPP in the RFC determination and fully account for those limitations in the hypothetical questions posed to the VE.

### B. Social Interaction Limitations

Next, Diane T. argues the ALJ failed to assess the state agency psychologists' social interaction limitations within her RFC or hypotheticals to the VE. Specifically, Diane T. argues the ALJ's failed to include the social limitation of brief supervision and interactions with coworkers and supervisors. [Filing No. 16 at 11, 14.] The Commissioner did not respond to this argument, simply concluding "the ALJ properly relied on [the state agency psychologists'] mental RFC explanations, which set forth their ultimate findings as to what Plaintiff was able to do in the workplace despite her mental limitations." [Filing No. 19 at 21.]

As stated previously, Drs. Hill and Larsen opined in their narrative summaries that Diane T. had the following social interaction constraint: "brief supervision and interactions with coworkers and work situations." [Filing No. 11-7 at 12, 26.] However, the ALJ did not include any conditions about Diane T.'s limitation in interacting with others in the hypotheticals to the VE. [Filing No. 11-6 at 166-170.] This was improper. *See Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record").

Neither of the exceptions to the general rule are applicable in this case. If an ALJ fails to include all of this information, then the VE's hypothetical and the assessment are insufficient unless: (1) the VE independently viewed the claimant's medical records or heard testimony

regarding the limitations in question; or (2) the ALJ phrased the hypothetical in such a way that "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619-20 (7th Cir. 2010). If the ALJ did not incorporate all limitations supported by medical records in the hypothetical posed to the VE and did not use those limitations in determining the claimant's RFC, then remand is required. *Id.* at 621.

There is no evidence in the record to suggest that the VE examined Diane T.'s medical records. Further the VE did not hear testimony regarding the social interaction limitation in question. The ALJ indicated she intended to discuss Diane T.'s mental health. [Filing No. 11-6 at 159.] However, she ended this questioning prior to discussing this limitation. Likewise, it was not "manifest" that the underlying limitation was included implicitly in the ALJ's questioning. While the ALJ did inquire about memory and time off-task, and Diane T.'s attorney discussed reminders or additional training by supervisors, the ALJ did not inquire further regarding Diane T.'s occupational base given her social-interaction limitations.

Additionally, as previously stated, "[t]he ALJ must confront the evidence that does not support h[er] conclusion and explain why that evidence was rejected." *Moore v. Colvin,* 743 F.3d 1118, 1123 (7th Cir. 2014). At Step Four, though noting contradictory evidence of her ability to deal with authority and get along with others, the ALJ ultimately concluded Diane T. had mild limitations in interacting with others. However, in her subsequent RFC analysis, the ALJ was silent on any social-interaction limitations. This was improper. Without any confrontation of these social-interaction limitations opined by the state agency psychologies, the Court is not able to determine how the ALJ found the medical record supported the result that Diane T. had no social-interaction limitations.

Because the ALJ failed to account in a hypothetical to the VE regarding Diane T.'s limitations in interacting with others and the ALJ failed to confront medical evidence that opined greater social-interaction limitations, remand is necessary for further consideration of this issue.

### C. Consultative Examiner's Findings

Next, Diane T. argues that the ALJ offered no good explanation for dismissing Dr. Sprinkle's opinion of more supervision, redirection, and repetition in favor of no limitations; namely after posing a hypothetical to the VE regarding time off-task and the VE responding the job of housekeeper would not be available if such a limitation was present. [Filing No. 16 at 16.]

The Commissioner responds that the ALJ was only required to provide source-level articulation of the medical opinion, so she was not required to discuss the persuasiveness of the comment in question. [Filing No. 19 at 22.] The Commissioner states that the CE's equivocal statement using "may" in conjunction with the phrase "require more supervision, redirection, and repetition when learning new tasks and concepts" did not clearly establish a limitation beyond the ALJ's RFC finding, namely because Diane T. had admitted she could perform housekeeping work alongside childcare work. [Filing No. 19 at 22.]

Diane T. replies that the Commissioner's response brief is attempting to offer post-hoc opinions and equating Diane T.'s ability to perform at-home tasks with her ability to function in a work environment against Seventh Circuit principles. [Filing No. 23 at 5.] She further argues the contention that the CE's statement was ambiguous due to prefacing the limitation with the word "may" is not supportable, maintaining the Seventh Circuit dictates that if an ALJ is concerned about ambiguity regarding an opinion, she should attempt to clarify with the expert who issued it. [Filing No. 23 at 6.]

Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. 404.1527(c)) (other citations omitted), the ALJ did not identify any other evidence in the record that contradicted the opinions of the CE, nor did she request clarification on this statement if she found it ambiguous.

The Commissioner maintains that Diane T.'s admissions regarding taking care of her grandchildren and performing housekeeping work at home, go against the CE's opinion that she would require any further limitations. [Filing No. 19 at 21-22.] Diane T.'s ability to do these activities does not necessarily mean she would not need additional time to do them. By itself, this reasoning is insufficient to discount the CE's opinion. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons [ ], and is not held to a minimum standard of performance, as she would be by an employer.").

Additionally, even the daily activities of taking care of her grandchildren or performing at-home housekeeping work are restricted by Diane T.'s ability to maintain pace and other limitations. The ALJ recognized that Diane T. had difficulty in her prior position as an ophthalmologist assistant where she made mistakes on the job, had memory issues, and she would have difficulties in performing tasks if they were not familiar or repetitive. [Filing No. 11-6 at 137, 154, 162-166.] This is more critical because Dr. Sprinkle's examination on November 13, 2017, shows support for greater restrictions than the ALJ opined. For example, at Dr. Sprinkle's exam, she conducted a memory test using the Wechsler Memory Scale-IV, showing Diane T.'s visual, immediate, and delayed memories fell into the extremely low range and her auditory and visual working memories fell into the borderline range. [Filing No. 11-11 at 160-161.] Dr. Sprinkle concluded Diane T.'s

"memory problems would have a moderate impact on her ability to perform daily and work activities," and that "[s]he would likely perform best in a routinized, manual laboring or simple job that limited complex decision making." [Filing No. 11-11 at 161.] These objective findings from Dr. Sprinkle's own exam, support her opinion.

The ALJ "must provide a 'logical bridge' between the evidence and his conclusions," *O'Connor-Spinner*, 627 F.3d at 618. The ALJ failed to build that logical bridge in this case, leaving the reviewer unable to follow the reasoning behind the RFC, and raising concerns that the ALJ substituted her own medical judgment for that of the CE that she discussed. *See, e.g.*, *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). Remand is necessary on this issue requiring the ALJ to reassess her RFC regarding Dr. Sprinkle's opinion that Diane T. requires more supervision, redirection, and repetition.

### D. Exertional Limitations and Irritants

Lastly, Diane T. argues the ALJ failed to assess agency expert limitations to her exposure to pulmonary irritants and erred by concluding that Diane T. retained a physical RFC allowing for the performance of medium work. [Filing No. 16 at 20.]

An RFC is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675-76 (citing 20 C.F.R. § 404.1545(a)(1)6; SSR 96-8p). The combined effect of all the claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *1, provides guidance that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." "Only after that may [an] RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* "Exertional capacity addresses an

individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately...." *Id.* at *5. However, the Seventh Circuit has joined its "sister courts ... in concluding that a decision lacking a seven-part function-by-function written account of the claimant's exertional capacity does not necessarily require remand." *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) (citing *Mascio v. Colvin*, 780 F.3d 632, 635-36 (4th Cir. 2015); *Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003)). The court explained that the role of reviewing courts is to verify that the ALJ's decision is supported by substantial evidence and addresses significant evidence and the functional limitations that evidence supports. *Jeske*, 955 F.3d at 596.

### 1. Breathing Difficulties

Diane T. argues that the state agency physicians, Dr. J. Sands, M.D. and Dr. B. Whitley, M.D., concluded she could not be exposed to "fumes, gases, dusts, odors and poor ventilation due to COPD." [Filing No. 16 at 21.]

The Commissioner argues that the medical records failed to establish any greater limitations due to COPD. [Filing No. 19 at 24.] The Commissioner then contends Diane T.'s continued to engage in housecleaning with no reactions to cleaning agents or dust, did not cite irritations to such at the hearing, and Diane T. continued to remain an active smoker after her alleged disability date after admitting it was harmful to her pulmonary conditions and declining offers for assistance with quitting. [Filing No. 19 at 23.]

Diane T. replies that the Commissioner cannot simply assure the Court that the ALJ considered this portion of the opinion without mention in the ALJ's RFC analysis. [Filing No. 23 at 2.] Further, Diane T. argues that the rationales outlined by the Commissioner have been discounted by the Seventh Circuit; namely that her continued smoking is not a rationale for discounting other pulmonary irritants, when no physician stated that stopping smoking would eliminate her intolerance for pulmonary irritants. [Filing No. 23 at 3.]

The ALJ found that Diane T. had severe COPD but set forth no associated limitations for pulmonary irritants in the RFC or hypothetical to the VE. The ALJ noted Diane T.'s July 2015 Pulmonary Function Test was normal, her emphysema was reported mild to moderate, and that in December 2017, she denied a history of asthma or COPD. [Filing No. 11-6 at 133.] Further, the ALJ posed a question to Diane T. at her hearing, asking "And is anything in particular, obviously the smoking's not good for it, but does anything in particular bother your breathing?" To which Diane T. responded, "No.' [Filing No. 11-6 at 163.] Lastly, the ALJ found the objective medical evidence did not support the state agency physician's opinions, though she did review much of their findings. [Filing No. 11-6 at 136-137.] However, the ALJ omitted any mention of the state agency physician's opinions that Diane T. should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation in the RFC or hypothetical to the VE. By failing to include any pulmonary limitations in the RFC, the ALJ did not present a hypothetical with Plaintiff's full range of functional limitations. It is not clear from the VE's testimony or the evidence of record that a limitation on exposure to pulmonary irritants would not also limit the availability of the remaining jobs identified by the VE.

As such, remand is warranted for the ALJ to include a discussion of whether limitations flowing from Diane T.'s COPD must be incorporated in the RFC, and if they are, to pose new

hypotheticals to the VE that contain those limitations. *See O'Connor-Spinner*, 627 F.3d at 619; *Indornato v. Barnhart*, 374 F.3d 470, 473-74 (7th Cir. 2004).

### 2. Limitation to Medium Work

Lastly, Diane T. argues that the ALJ overruled the state agency physicians' opinions without a contradictory expert opinion in the record and relied on her own medical judgments in deciding she was limited to medium work. [Filing No. 16 at 20-23.] Diane T. argues that the ALJ's exclusion of this portion of the opinion and her citation only to musculoskeletal findings in dismissing the opinion of the state agency physicians was in error. [Filing No. 23 at 3.]

We agree that the ALJ failed to provide adequate reasons for discounting these doctors' assessments. An ALJ need not credit the opinions of the agency's own doctors, but rejecting the opinion of an agency's doctor that supports a disability finding is "unusual" and "can be expected to cause a reviewing court to take notice and await a good explanation." *Beardsley,* 758 F.3d at 839; see also *Garcia v. Colvin,* 741 F.3d 758, 761 (7th Cir. 2013) (given their employment relationship, the agency's doctors are "unlikely ... to exaggerate an applicant's disability").

In assigning an RFC for medium work, the ALJ ruled that the prior administrative medical findings of the state agency medical consultants who opined Diane T. was capable of light work, were not substantiated by subsequent medical evidence. [Filing No. 11-6 at 136-137.] The ALJ noted that "[m]ost of her objective progress notes from treating sources noted no limitations on her range of motion (ROM)"; in May 2015 and September 2015, her musculoskeletal exam was negative for back pain, joint swelling, arthralgia, gait problem, neck pain and neck stiffness; in March 2016 Diane T. "had normal range of motion"; and in October 2017 her musculoskeletal review reported joint paint but no swelling, and stiff joints but no reported reduction in ROM. [Filing No. 11-6 at 137-138.] At the hearing, the ALJ discussed Diane T.'s prior lifting

requirements, noting that at most she had to lift two pounds at her past ophthalmologist assistant position and as a house cleaner, a vacuum. [Filing No. 11-6 at 152-153.] The ALJ also found Diane T.'s daily activities to be consistent with the ability to work at this capacity but provided no explanation for how those activities ("able to care for personal needs such as showering, shaving, and her hair" and "watches her grandchildren often without problems") are consistent with or at all related to an ability to lift 25 to 50 pounds for six hours during an eighth hour work-day. [Filing No. 11-6 at 132.]

While the ALJ assessed that Diane T. could do medium work involving lifting 50 pounds occasionally and 25 pounds frequently, the ALJ's decision does not identify any medical evidence to substantiate the claim that Diane T. had the ability to perform at these levels. As such, the ALJ failed to build a logical bridge between Diane T.'s past work, current level of daily activities, and an RFC for performing medium work, warranting remand on this issue. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (emphasizing that the ALJ must connect the evidence of record to her conclusion through "an accurate and logical bridge"); *see also Blakes*, 331 F.3d at 569.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Diane T. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final judgment will issue by separate entry.

Date: 3/22/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**